No. 13-1434

UNITED STATES COURT OF APPEALS

for the FOURTH CIRCUIT

TREY Z. COOPER

Appellant-Appellant

v.

DSM NUTRITIONAL PRODUCTS, LLC

Defendant –Appellee

On Appeal from the U.S. District Court for the

District of South Carolina at Florence

## BRIEF OF APPELLANT TREY COOPER

Pheobe A. Clark
Wukela Law Firm
P.O. Box 13057
Florence, SC 29504
(843) 669-5634 (phone)
(843) 669-5150 (fax)

*Attorney for Appellant*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ………………………………………….. i - iii

STATEMENT OF SUBJECT MATTER JURISDICTION
AND APPELLATE JURISDICTION ……………………………… 1

STATEMENT OF THE ISSUES ………………………………….... 1

STATEMENT OF THE CASE ………………………………….….. 2

STATEMENT OF THE FACTS ………………………………….… 3

    1. Prima Facie Evidence ………………………………….….. 4

    2. Disparate Treatment ………………………………….….. 8

    3. Pretext ………………………………….……………….… 11

SUMMARY OF ARGUMENT …………………………………….… 11

STANDARD OF REVIEW …………………………………………... 14

ARGUMENT

    ISSUE 1 ………………………………………………………… 14

Did the District Court erroneously grant summary judgment on
Appellant's disparate treatment claim?

    ISSUE 2 ………………………………………………………… 14

Did the district court erred by failing to find clear error in the
Magistrate's improper weighing the evidence on Appellant's
disparate treatment claim, by improperly weighing evidence
and by failing to draw all inferences in the light most favorable
to Appellant?

    1. A *Prima Facie* Case ……………………………………….. 15
    2. *Prima Facie* Case Flexibility ……………………………… 28

CONCLUSION ……………………………………………………….    33

REQUEST FOR ORAL ARGUMENT …………….…………………    34

CERTIFICATE OF COMPLIANCE ……………….…………..…….    35

CERTIFICATE OF FILING AND SERVICE ………………………….    36

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No.  13-1434         Caption:  Trey Z. Cooper v. DSM Nutritional Products, LLC

Pursuant to FRAP 26.1 and Local Rule 26.1,

Trey Z. Cooper
(name of party/amicus)


who is _____ Appellant _____ , makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                        ☐ YES ☑ NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _Rhevbr A Clark_                     Date: _5/28/13_

Counsel for: Appellant

## CERTIFICATE OF SERVICE
***************************

I certify that on ____May 28, 2013____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Jonathan P. Pearson
FISHER AND PHILLIPS LLP
Post Office Box 11612
South Carolina 29211
(803) 255 – 0000 (phone)
(803) 255 – 0202 (fax)

Christopher G. Mackaronis
BRICKFIELD, BURCHETTE, RITTS
& STONE, PC
1025 Thomas Jefferson Street, NW
Eighth Floor, West Tower
Washington, DC 20007
(202) 342-0800 (phone)
(202) 342-0807 (fax)

_____
(signature)

_5/28/13_
(date)

# TABLE OF AUTHORITIES

<u>Page(s)</u>

<u>Cases</u>

*Aka v. Wash. Hosp. Ctr.,*
    156 F.3d 1284, 1291 (D.C. Cir. 1998)........................ 26

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 255 (1986) ..................................... 14

*Ballinger v. North Carolina Agricultural Extension Service,*
    815 F.2d 1001, 1005 (4th Cir. 1987) ....................... 17

*Brown v. McLean,*
    159 F.3d 898 (4th Cir. Md. 1998) ........................... 29, 30

*Brinkley v. Harbour Recreation Club,*
    180 F.3d 598, 611 (4th Cir. 1999) .......................... 29

*Carson v. Bethlehem Steel Corp.,*
    82 F.3d 157,158 (7th Cir. 1996) ........................... 12, 24, 27, 34

*Diamond v. Colonial Life and Accident Ins. Co.,*
    416 F.3d 310 (4th Cir. 2005) ................................ 16

*Hill v. Lockheed Martin Logistics Mgmt., Inc.,*
    354 F.3d 277, 286 (4th Cir. 2004) (en banc) ............... 11, 15

*Holland v. Washington Homes, Inc.,*
    487 F.3d 208, 213 (4th Cir. 2007) .......................... 14

*Howard v. Roadway Express, Inc.,*
    726 F.2d 1529, 1535 (11th Cir.1984) ....................... 29

*Hoyle v. Freightliner, LLC,* 2011 U.S. App. LEXIS 6628
    (4th Cir. Apr. 1, 2011)*(citing Gray v. Spillman,*
    925 F.2d 90, 95 (4th Cir. 1991) .............................. 20

*Hughes v. Bedsole,*
    48 F.3d 1376, 138e (4th Cir.), cert. denied,
    116 S. Ct. 190 (1995)....................................... 5

i

*Jones v. Western Geophysical Co.,*
  669 F.2d 280, 284-85 (5th Cir.1982) ........................... 30

*Lightner 545 F.3d at 265* ............................................. 20

*Marlow v. Chesterfield County Schl Bd.,*
  749 F. Supp. 2d 417,437
  (citing *Ballinger*, 815 F.2d at 1005) ........................... 17

*Marlow v. Chesterfield County Schl Bd.,*
  749 F. Supp. 2d 417,431.
  (citing *Reeves,* 530 U.S. at 153) ............................... 17, 19, 23

*McDonnell Douglas Corp. v. Green,*
  411 U.S. 792, 802 n.13 (1973) ............................... 28, 29, 31,
                                                            32, 33

*Meiri v. Dacon,*
  759 F.2d 989 (2d Cir. N.Y. 1985) ........................... 30

*Merritt v. Old Dominion Freight Line, Inc.,*
  601 F.3d 289, 295 (4th Cir. 2010) ........................... 14

*Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir. 2006)
  (quoting Hill v. Lockheed Martin Logistics Mgmt.,
  354 F.3d 277, 285 (4th Cir. 2004) (en banc)).* ............ 15

*Moore v. City of Charlotte,*
  754 F.2d 1100, 1107 (4th Cir. 1985) ........................ 22, 23, 29

*O'Connor v. Consolidated Coin Caterers Corp.,*
  56 F.3d 542, 547 (4th Cir. 1995) ........................... 18

*Pivirotto v. Innovative Systems, Inc.,*
  191 F.3d 344 (3d Cir. Pa. 1999) ........................... 31

*Reeves v. Sanderson Plumbing Prods., Inc.,*
  530 U.S. 133, 150, 120 S. Ct. 2097,
  147 L. Ed. 2d 105 (2000) ................................... 16, 17, 26

*Sears,* 243 F.3d at 857
  *(citing Reeves v. Sanderson Plumbing Prods., Inc.,*
  530 U.S. 133, 150, 120 S. Ct. 2097,2108,
  147 L. Ed. 2d 105 (2000) ................................... 27, 28

*Warch v. Ohio Cas. Ins. Co.,*
     435 F.3d 510, (4th Cir. 2006) ………………………….    18, 29

*Williams v. Trader Publishing Co.,*
     218 F.3d 481, 485 (5th Cir. 2000) ……………………...    30

## **Statutes**

Title VII, 42 U.S.C. § 2000e et seq………………………………    1

28 U.S.C. § 1331 ………………………………………………    1

28 U.S.C. § 1291 ………………………………………………    1

## **Rules**

Fed. R. Civ. P. 56(c) ………………………………………….    14

Federal Rule of Evidence 104(b) ………………………………..    20

## STATEMENT OF SUBJECT MATTER JURISDICTION AND APPELLATE JURISDICTION

The Appellant brought suit against his former employer for allegedly engaging in race-discriminatory conduct and for wrongful termination, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Subject matter jurisdiction was conferred on the district court by 28 U.S.C. § 1331. Appellate jurisdiction is conferred on this Court by 28 U.S.C. § 1291, this being an appeal from a final judgment of the district court dated March 4, 2013, adopting the Report and Recommendation of the Magistrate and entering summary judgment in favor of Defendant, formerly known as Martek Biosciences Kingstree Corporation, and now known as DSM Nutritional Products, LLC.

## STATEMENT OF ISSUES

1. Did the District Court erroneously grant summary judgment on Appellant's disparate treatment claim?

2. Did the district court erred by failing to find clear error in the Magistrate's improper weighing the evidence on Appellant's Disparate treatment claim, by improperly weighing evidence and by failing to draw all inferences in the light most favorable to Appellant?

1

## STATEMENT OF THE CASE

This is an appeal from the district court upon the granting of a Motion for Summary Judgment in a case brought pursuant to Title VII of the Civil Rights Act of 1964, hereinafter, "Title VII," 42 U.S.C. § 2000e et seq. The Appellant, a former employee of the Appellee employer, filed suit on September 22, 2011 in the United States District Court, District of South Carolina, Florence Division. (Joint Appendix, hereinafter, "J.A.," 2). The Appellant alleged that the Appellee had engaged in discriminatory conduct and that the Appellant had been wrongfully terminated.

After the discovery period had concluded, the Appellee filed a Motion for Summary Judgment on August 24, 2012, with a memorandum in support and exhibits. (J.A. 4, Doc. #26). On September 10, 2012, Appellant thereafter filed a brief in opposition of the Appellee's motion, with exhibits. (J.A. 4, Doc. #27-29). On September 14, 2012, the Appellee filed a Reply Brief to Appellant's Brief in Opposition. (J.A. 5, Doc. 30). On January 25, 2013, the Magistrate issued a Report and Recommendation recommending that Defendant's Motion for Summary Judgment be granted and the case be dismissed, finding Appellant failed to meet his burden of creating a genuine dispute of material fact as to whether termination was based upon his race. (J.A. 6, 177-197).

2

On March 4, 2013, the district court entered an Opinion and Final Order in

the matter overruling all of Appellant's objections, adopting the report and

recommendation of the Magistrate, granting summary judgment to the Appellee

and dismissing the case. (J.A. 6, 199-208). The district court opined that the

Appellant had failed to show satisfactory job performance; and Appellant failed to

show that other employees outside the protected class were treated differently for

similar behavior; and with respect to pretext, Appellant failed to present evidence

sufficient to show that racial discrimination was a part of Defendant's normal

operating procedures. (J.A. 203-207).

The Appellant timely filed his Notice of Appeal on April 2, 2013, in the

district court, and fulfilled all subsequent filing requirements including the filing of

this brief and the contemporaneously filed Joint Appendix. (J.A. 209).

## STATEMENT OF THE FACTS

Appellant, a black male, had been employed with Defendant Martek

Biosciences Kingstree Corporation from February 6, 2006 until March 1, 2010.

From the beginning of Appellant's employment, he experienced racial

discrimination during the hiring process, the training process, the performance

evaluation process and in the disciplinary process. (J.A. 132-134).

3

Plaintiff claims Defendant did not grant him an interview until Plaintiff posed as a delivery man just for the chance to express his interest in the position as a QC Analyst. Even then, Defendant only offered Plaintiff a position in production in the plant. (J.A. 87-88). Plaintiff has a dual degree in chemistry and biology. Plaintiff was eventually offered the position after applying four years and going through three interviews. (J.A. 132-134).

Despite the unequal biased scrutiny, Appellant, who remained a QC Analyst I after 4 years of employment, was not on a performance improvement plan at the time of his termination and was never under the immediate threat of termination based on performance.

Appellant was terminated on March 1, 2010, and Defendant's termination reason was "falsification of documents" occurring on February 25, 2010. Appellant attempted to grieve his termination claiming that other employees were not terminated for similar policy evaluations. However, Defendant upheld Appellant's termination.

## 1.    Prima Facie Evidence

To establish a prima facie case that Appellant, Trey Cooper, was fired because of his race, he had to set forth specific facts showing that: "(1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he was fired; and (4) other employees who are

4

not members of the protected class were retained under apparently similar

circumstances." *Hughes v. Bedsole*, 48 F.3d 1376, 138e (4th Cir.), cert. denied, 116

S. Ct. 190 (1995).

Appellant, an African American male, was discharged on March 1, 2010 for

"falsifying documents". On February 25, 2010, Appellant was asked to complete a

form entering the test results on a batch of product. It is undisputed that the product

Appellant was asked to complete the form for was not even at the Plant. Despite

Appellant informing his supervisor that he did not know how to perform the task,

as he worked with a partner who completed that task, Appellant's supervisor

insisted that he complete a form on a product that was not even located at the

facility. It is undisputed that Appellant informed his supervisor that he had not

completed that document before. (J.A. 52). Appellant's partner was not present on

this day, so Appellant asked a co-worker for help who informed Appellant that the

results were usually typical and to put that (J.A. 90-94). After insisting that

Appellant complete the task despite his informing her that he did not know how,

Appellant's supervisor waited for Appellant to complete the task and immediately

re-did the task the next day and discovered the sample was not at the facility. (J.A.

58). Appellant's supervisor does not usually check the samples after they are

completed (J.A. 55). Appellee then terminated Appellant for falsification of

documents.

5

As the Magistrate acknowledged in its Report and Recommendation, "It is undisputed that Appellant is a member of a protected class and that he suffered an adverse employment action when he was terminated." (J.A. 191). At issue are the two remaining elements of the claim: (a) satisfactory performance; and, (b) comparator employees engaged in similar conduct.

### a)    **Satisfactory Performance**

Before the February 25, 2010, incident, Plaintiff's last performance evaluation was on November 1, 2009, and was rated as a Needs Improvement, but Plaintiff was not on a performance improvement plan at that time and he was not under direct threat of termination for performance. (J.A. 72).

### b.    **Appellant's Replacement**

Appellant was terminated on March 1, 2010. Appellee hired Jernika Byers, an African American temporary employee for Appellant, as a permanent employee on June 15, 2010. (J.A. 67, 75). Jernika Byers had been working as a temporary employee as of September 21, 2009. Before Appellant's termination, his partner in the lab was Catrecia Towns. When one of Appellant's supervisors was asked who Catrecia Towns' current employee was at the time of his deposition on June 20, 2012, his response was that Nikki Lee, a Caucasian

6

female with a lengthy history of disciplinary problems, was Catrecia Towns current partner. [1]

## c. **Comparator Employees engaged in similar conduct**

Nikki Lee had engaged in disruptive, insubordinate behavior at work, left work early without permission, and engaged in these behaviors on at least two other occasions (J.A. 161-163); and for these infractions, she was placed on 90 day probation. Nikki Lee had been counseled for leaving work early without permission, (J.A. 142) and for expressing to others her dissatisfaction with her supervisor Michael Shepherd, and therefore, being insubordinate as described by Michael Shepherd. (J.A. 144-145). Nikki Lee's offenses are "Level II" offenses as described in Defendant's Offense Code. (J.A. 159), and Level II offenses are more serious offenses as stated by Senior HR manager Brian Lee. (J.A. 21-22). Plaintiff was terminated for falsification of records, which is also labeled as a "Level II" according to Defendant's handbook. (J.A. 159).

Other employees of Defendant who were Caucasian were not disciplined in the same manner as Plaintiff. Benjie Spring did not clock out at all on January 6, 2007; and the gate detail clearly shows that Benjie Spring left the premises on

[1] Appellant intends to file a Motion to File an Attachment to the Brief to include page 56 of Michael Shepherd's deposition, which was misreferenced in Appellant's prior briefs filed in the lower court and therefore omitted from the Appendix.

7

January 6, 2007. (J.A. 164-165). Benji Spring, a Caucasian employee, failed to

punch the time clock and left, clearly falsifying his time card. However, although

Michael Shepherd was reprimanding Trey Cooper for this behavior, Michael

Shepherd was taking no actions against Caucasian employees for the same

behavior. Dawn Barfield, a Caucasian employee, signed off on a document stating

that a task had been completed. However, while Michael Shepherd was

reprimanding Trey Cooper for listening to music on his phone (J.A. 143), Michael

Shepherd sent Dawn an email asking her to make sure all is complete before

signing off. (J.A. 166). Dawn Barfield signed off on a document before everything

was completed; and she was not terminated for this falsification of records.

### 2.    Disparate Treatment

Appellant's prior corrective actions and performance evaluations were noted

on his termination form and therefore considered in the termination decision (J.A.

72). Those prior performance evaluations were completed under Appellant's

supervisor, Michael Shepherd. Appellant was terminated under a new supervisor,

Michelle Miller. It has been admitted that the Lab Manager did not have the sole

power to terminate employees. (J.A. 140-141), (J.A. 49). The decision to terminate

Appellant was ultimately reviewed and approved within the Human Resources

Department as no disciplinary actions were taken without the direct involvement of

the Human Resources Department as counsel to management; and the senior HR

8

Manager responsible for approving the employment decision was Brian Lee. (J.A. 66).

A supervisor for Defendant detailed the disciplinary process in her deposition:

A: "Anytime there is a disciplinary, incident of a disciplinary nature, it is brought to Human Resources attention and it, it [goes] through them…"

(J.A. 49-50).

Brian Lee, HR Manager, recounted many disciplinary matters that he had knowledge of and some rationales behind his decision. Brian Lee, HR Manager, testified that when a Caucasian employee was accused of sexual harassment, the only action taken against him was a demotion from supervisor to operator (J.A. 24); and when one Caucasian co-worker called another African American co-worker a nigger, a comment that Brian Lee takes very seriously, that co-worker was only suspended because of lack of previous issues and because he apologized. (J.A. 27-29). Brian Lee explains that with that incident "you have to look at the situation" and co-workers were in the break area "joking back and forth" and the co-worker had "apologized immensely to Mr. Rogers." (J.A. 27-29).

Brian Lee also demonstrates a different attitude toward another African American employee, Moses Fulton's absences and Caucasian employee Joe

9

Weatherford's tardies as well. Both employees engaged in attendance violations. Moses Fulton had to take excessive absences due to the passing of his ex-wife resulted in him having to take custody of his other two children in addition to his one year old, one of which had medical issues. Brian Lee admits to having knowledge that Moses Fulton's ex-wife was murdered (a horrific incident by any standard) and that Plaintiff was abruptly placed in a situation with two additional children. (J.A. 37-39). Despite all this knowledge, Brian Lee offered Plaintiff no alternatives to allow him to leave work. However, Brian Lee allowed Joe Weatherford (with 50 tardies in a 6 month period in 2006) to work from home because he was going through a divorce, (J.A. 37-39) and he did not appear to have a problem with him being "understandably out a bit" in 2009 because of his divorce and getting custody of his kids. (J.A. 34-36). Although reasonable minds would agree that bereavement for the murdered mother of Plaintiff's children trumps divorce, it appears that the only person in this scenario who was given any concessions, was the Caucasian employee going through a divorce.

In addition, Veronica Smith, an employee who has also filed a claim of discrimination, while working in the IT department, describes times when she was asked to investigate suspected issues with African American employees – and when it was discovered that misconduct was done by Caucasian employees, no further action was taken. It should be no surprise that Trey Cooper was one of the

10

employees she was asked to investigate whether or not he downloaded software

dealing with his phone or his personal business  - and no misconduct was

discovered by the African Americans that Veronica Smith was asked to

investigate. (J. 157 - 158).

### 3.    Pretext

Other African American employees also claimed to be victims of Appellee's

discriminatory work environment. Veronica Smith filed a claim of discrimination

with respect to disparate discipline and unfair treatment in terms and conditions of

work. (U.S. District Court Case # 4:11-cv-03457).  Moses Fulton filed a claim of

discrimination with respect to disparate discipline, failure to promote and unfair

treatment in terms and conditions of employment.  (U.S. District Court Case #

4:11-cv-03239).  William Rogers filed a claim of discrimination with the EEOC

against Defendant for racial discrimination, (EEOC # 436-2008-00174), after he

had been called a nigger. (J.A. 27-28).  In addition, Brian Lee testified to prior

incidents of sexual harassment and two claims of race discrimination involving

Desmond Jackson and Jawan McCray. (J.A. 24-16).

## SUMMARY OF ARGUMENT

"The ultimate question in every employment discrimination case involving a

claim of disparate treatment is whether the appellant was the victim of intentional

discrimination." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 286

(4th Cir. 2004) (en banc). "To demonstrate such an intent to discriminate, . . . an individual . . . must produce sufficient evidence upon which one could find that the protected trait actually motivated the employer's decision." *Id.* The Seventh Circuit has emphasized that the central inquiry in a discriminatory discharge case was **"whether the employer would have taken the same action had the employee been of a different race....".** *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157,158 (7th Cir. 1996).

That is the central inquiry in this case. When multiple Caucasian employees engage in Level II offenses within their employment, some of them committing multiple offenses multiple times, and remain employed, is there circumstantial evidence to support a jury question of discrimination based on race, when an African American employee commits a Level II offense and is terminated?

Appellant committed a Level II offense just like co-workers inside and outside of his department. While supervisors make recommendations with respect to corrective actions, all decisions are made with the direct involvement of human resources. (J.A. 49-50) (J.A. 140-141). The human resources representative who was involved in Appellant's and his comparators' discipline was Brian Lee. (J.A. 66). Of all of Apellant's comparators, Appellant was the only employee to be terminated for his Level II offense. Appellant presented a work environment of hostility toward him and other African American employees (J.A. 132-134); a

12

work environment where investigations were initiated against African American

employees, but terminated when the culprit was actually discovered to be a

Caucasian employee. (J.A.157 - 158).

Despite the evidence that at the very least it created a material question of

fact to be weighed by a jury, the district court opined that the Appellant had failed

to show satisfactory job performance; and Appellant failed to show that other

employees outside the protected class were treated differently for similar behavior;

and with respect to pretext, Appellant failed to present evidence sufficient to show

that racial discrimination was a part of Appellee's normal operating procedures.

(J.A. 203-207).

Appellant's first issue on appeal of the District Court's decision is that the

lower court applied a rigid *prima facie* analysis, thus precluding Appellant from

advancing his discriminatory discharge claim based on disparate treatment.

Appellant's second issue on appeal of the District Court's decision is that

both judges in the lower court improperly weighed the evidence before them rather

than determine simply the existence of evidence of material fact in dispute that

would allow a fact finder to make a determination of race discrimination.

## STANDARD OF REVIEW

The Court reviews the trial Court's decision on summary judgment de novo,

applying the same standard as the district court.  See Fed. R. Civ. P. 56(c); *Holland*

*v. Washington Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007).  Under that

standard, summary judgment is appropriate when "there is no genuine issue as to

any material fact." Fed. R. Civ. P. 56(c)(2); *Merritt v. Old Dominion Freight Line,*

*Inc.*, 601 F.3d 289, 295 (4th Cir. 2010).  The court must draw any permissible

inference from the facts in the light most favorable to the nonmoving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ARGUMENT

### ISSUE 1:

Did the District Court erroneously grant summary judgment on Appellant's

disparate treatment claim?

### ISSUE 2:

Did the district court err by failing to find clear error in the  Magistrate's

improper weighing the evidence on Appellant's disparate treatment claim, by

improperly weighing evidence and by failing to draw all inferences in the light

most favorable to Appellant?

14

### 1. **A *Prima Facie* Case**

Appellant's claim is one of discriminatory discharge based on race. Specifically, Appellant contends that similarly situated co-workers were not terminated for offenses in the same category code as appellant's offense.

#### a.  The Magistrate recommended dismissal of Appellant's Claim

The Magistrate acknowledged the standard to obtain relief based upon alleged race discrimination under Title VII, a appellant must demonstrate that: (1) he is a member of the protected class; (2) he suffered an adverse employment action; (3) at the time of the adverse action, he was performing at a level that met the employer's legitimate expectations; and (4) his position remained open or was filled by a similarly qualified individual outside the protected class. *Miles v. Dell, Inc.*, 429 F.3d 480, 485 (4th Cir. 2006) (*quoting Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc)). (J.A. 190).  The Magistrate recommended dismissal of Appellant's case upon a determination that Appellant failed to meet his burden of creating a genuine dispute of material fact as to whether his termination was based upon race.  Appellant objected to the Magistrate's determinations with respect to elements of the *prima facie* claim with respect to whether or not Appellant was meeting his employer's standard, was replaced by someone outside of his respective class, whether or not the comparators were similarly situated.  Appellant noted in its standard of review and

argument that the court cannot make credibility determinations or weigh the

evidence, but the court should examine uncontradicted and unimpeached evidence

offered by the moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

### b. The Court adopted the recommendation of the Magistrate

The District Court overruled Appellant's objections. In its

standard of review, the lower court acknowledged, "The Court reviews only for

clear error in the absence of specific objection. *See Diamond v. Colonial Life and

Accident Ins. Co.,* 416 F.3d 310 (4th Cir. 2005)." (J.A. 201) . The lower court

determined that the Appellant had failed to show satisfactory job performance; and

Appellant failed to show that other employees outside the protected class were

treated differently for similar behavior; and with respect to pretext, Appellant

failed to present evidence sufficient to show that racial discrimination was a part of

Appellee's normal operating procedures. (J.A. 203-207).

In adopting the report and recommendation of the Magistrate, the

lower court erred in adopting the improper weighing of evidence by the Magistrate

without finding clear error. The lower court ultimately made decisions about the

discriminatory work environment finding first by the magistrate that Appellant

failed to create a genuine dispute of material fact as to whether his termination was

based upon race, and then by the judge that Appellant failed to show that racial

16

discrimination was a part of Appellee's normal operating procedures. Summary judgment is "seldom appropriate in cases wherein particular states of mind are decisive as elements of a claim or defense." *Ballinger v. North Carolina Agricultural Extension Service*, 815 F.2d 1001, 1005 (4th Cir. 1987) (internal citations and quotations omitted). Accordingly, "courts must take special care in [these] cases . . . because motive often is the critical issue in employment discrimination cases." *Marlow v. Chesterfield County Schl Bd.,* 749 F. Supp. 2d 417,437 (*citing Ballinger*, 815 F.2d at 1005).

The lower court discredited legitimate evidence proferred by Appellant in a way that allowed the lower court "impermissibly substitute its judgment concerning the weight of the evidence for the jury's." *Marlow v. Chesterfield County Schl Bd.*, 749 F. Supp. 2d 417,431. (*citing Reeves*, 530 U.S. at 153).

### c. Appellant meeting expectations

Before the February 25, 2010, incident, Appellant's last performance evaluation was on November 1, 2009, and was rated as a Needs Improvement, but Appellant was not on a performance improvement plan at that time and he was not under direct threat of termination for performance. (J.A. 72). While Appellant had marginal employee evaluations, Appellant also provided evidence of his co-workers committing multiple offenses and remaining employed,

17

which indicates that employees with multiple offenses are not under threat of termination and maintaining employment with Appellee.

A party may establish a *prima facie* case by proffering evidence that demonstrates (or at least creates a question of fact) that the employer's expectations were illegitimate. *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, (4th Cir. 2006). Appellant has done that by showing that the employer allowed other employees to commit multiple policy violations, have multiple probation violations and remain employed. The Magistrate lists Appellant's discipline and evaluation history from 2007 to the date of Appellant's termination in March 2010. However, *See O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 547 (4th Cir. 1995) (*holding that a review of an employee's 1989 performance was irrelevant to a determination of whether his performance was satisfactory at the time of his termination in August of 1990*), rev'd on other grounds, 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). Therefore, Appellant's past history, especially when he was not on probation at the time of termination, is prejudicial and irrelevant to the fact of whether Appellant's performance was satisfactory at the time of his termination.

As noted in *Warch v. Ohio Cas. Ins. Co.,* 435 F.3d 510, 517 (4th Cir. Md. 2006):

18

Although on summary judgment, an employer is free to assert that the job expectation prong has not been met, nothing prohibits the employee from countering this assertion with evidence that demonstrates (***or at least creates a question of fact***) that the proffered "expectation" is not, in fact, legitimate at all. Thus, ***where application of the qualification or expectation element of the prima facie case seems to preclude an otherwise meritorious claim, the appellant is free to demonstrate that the employer's qualifications or expectations are not, in fact, "legitimate***." (emphasis added).

Appellee's expectations of perfection from Appellant are not legitimate in light of the numerous company violations that were handled with probation and suspension and all other employees remaining employed. Appellant has presented enough evidence to be properly weighed before a jury in determining whether or not Appellant was meeting the employer's legitimate expectations when he was not on probation or under the threat of termination at the time he was abruptly terminated by Appellee.

The lower court discredited legitimate evidence proffered by Appellant that the Appellee's expectations were not legitimate in light of discipline history of other employees, in a way that allowed the lower court "impermissibly substitute its judgment concerning the weight of the evidence for the jury's." *Marlow v. Chesterfield County Schl Bd.*, 749 F. Supp. 2d 417,431. (*citing Reeves*, 530 U.S. at 153).

    d.  <u>Appellant similar comparators</u>

The lower court further weighed evidence when it determined that Appellant failed to show that other employees were similarly situated. The Court

interpreted Appellant's comparator evidence in the light most favorable to
Appellee and finding those comparators were not "similarly situated" in clear
violation of the summary judgment standard. *See Hoyle v. Freightliner*, LLC, 2011
U.S. App. LEXIS 6628 (4th Cir. Apr. 1, 2011) (emphasis added) (*citing Gray v.
Spillman*, 925 F.2d 90, 95 (4th Cir. 1991)), ("[t]he question at the summary
judgment stage is not whether a jury is sure to find a verdict for the Appellant; the
question is whether a reasonable jury could rationally so find."). In addition, the
Court should have found that Appellant had introduced evidence "sufficient to
support a finding" that Appellant's comparators, including Nikki Lee, the person
working with Appellant's prior partner, were punished less severely than Appellant
was or that they were more culpable, as set forth below. *See Lightner* 545 F.3d at
265; Federal Rule of Evidence 104(b).

　　　The Magistrate determined that Appellant failed to meet the element of
establishing similarly situated employees because Appellant failed to show that
any of the employees engaged in the same conduct. Dawn Barfield falsified
records just like Appellant and worked in the same capacity as Appellant. Dawn
Barfield, a Caucasian employee, signed off on a document stating that a task had
been completed. However, while Michael Shepherd was reprimanding Trey
Cooper for listening to music on his phone (J.A. 143), Michael Shepherd sent
Dawn an email asking her to make sure all is complete before signing off. (J.A.

166). Dawn Barfield signed off on a document before everything was completed; and she was not terminated for this falsification of records.

Appellant also provided other co-worker's Level II infractions, to include leaving work on the clock and signing off on documents stating they were completed, as well as other employees engaged in discriminatory behavior such as racial slurs and sexual harassment. All remained employed. The *prima facie* case requires that the comparators' conduct be of comparable seriousness as the Appellant's, although not necessarily the identical offense. *See Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993).

Nikki Lee, in the same department as Appellant, had engaged in disruptive, insubordinate behavior at work, left work early without permission, and engaged in these behaviors on at least two other occasions (J.A. 161-163); and for these infractions, she was placed on 90 day probation. Nikki Lee's offenses are "Level II" offenses as described in Appellee's Offense Code (J.A. 159), and Level II offenses are more serious offenses as stated by Senior HR manager Brian Lee. (J.A. 21-22). The Magistrate continually finds that Appellant does not provide employees who engaged in similar conduct, but the Level II offenses are inherently similar as they are all categorized as Level II rather than Level I – clearly they are of comparable culpability. All offenses subject the employees to immediate termination – however, only the African American employees were terminated.

21

With respect to comparator employees, the Fourth Circuit has held that when assessing the seriousness of the misconduct, "precise equivalence in culpability between employees is not the ultimate question … comparison can be made in light of the harm caused or threatened to the victim or society, and the culpability of the offender." *Moore v. City of Charlotte*, 754 F.2d 1100, 1107 (4th Cir. 1985) (emphasis added).  Therefore it is clear that the Fourth Circuit does not require a comparator to engage in identical or the same conduct – simply conduct of comparable culpability.

And there is a question of fact as to whether or not Level II offenses, all categorized under the same setting in Appellee's own handbook, are comparable offenses with respect to an assessment of similar conduct.  A "principled determination of 'comparable seriousness' require[s] at least initial deference to the system of offenses created by [the employer]." *Moore V. City of Charlotte,* 754 F.2d 1100, 1108 (4th Cir. 1985). This inquiry assigns to lower courts the "difficult, but not unfamiliar, task of assessing the gravity of the offenses on a relative scale." Id. at 1107 (emphasis added).  S*ee also Alexander v. City of Greensboro*, 762 F.Supp.2d 764, 796(M.D.N.C. 2011).  ([P]recise equivalence in culpability between employees is not the ultimate question: . . . an allegation that other employees involved in acts against [the employer] of comparable seriousness

[were treated less severely] is adequate to plead an inferential case." (alterations in original) (*citing Moore v. City of Charlotte*, 754 F.2d 1100, 1107 (4th Cir. 1985)).

The lower court discredited legitimate evidence proferred by Appellant that the Appellant was treated differently than those similarly situated who also committed Level II offenses, in a way that allowed the lower court "impermissibly substitute its judgment concerning the weight of the evidence for the jury's." *Marlow v. Chesterfield County Schl Bd.*, 749 F. Supp. 2d 417,431. (*citing Reeves*, 530 U.S. at 153).

### e. Pretext

Once Appellee offers evidence to support that legitimate non-discriminatory reasons were the cause of the adverse employment action, the burden shifts back to Appellant to prove pretext. *Marlow*, 749 F. Supp. 2d at 431 (*citing Reeves*, 530 U.S. at 142-43). The Appellant must then carry the ultimate burden of proving intentional discrimination based on race. *Id.* (*citing Reeves*, 530 U.S. at 146). Such proof may be separate evidence of race animus or the resulting reasonable inference of discrimination based on evidence that the employer's explanation is false. *Id.* (*citing Reeves*, 530 U.S. at 146-147). As the *Marlow* court determined, the Appellant in the current action may "offer both measures of possible proof." *Id.* at 431. In the instant matter, the evidence clearly passes this scrutiny.

This Court has set a precedent holding "rejection of the legitimate, nondiscriminatory reason proffered by the Appellee, coupled with the elements of the *prima facie* case, may permit the fact-finder to infer the ultimate fact of invidious discrimination with no additional proof of discrimination." *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995).

The Appellees have advanced and the lower court believed that Appellee had a legitimate non-discriminatory reason for terminating Appellant. However, in the discussion of pretext, this Court should ask the Seventh Circuit question **"whether the employer would have taken the same action had the employee been of a different race**...." *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157,158 (7th Cir. 1996). As the seventh circuit emphasized, this should be the central inquiry in a discriminatory discharge case; and as the central inquiry, it should also be a question advanced to determine the existence of pretext.

Appellant has established that discipline has clearly differed along racial lines from the investigations being started and stopped based on race (J.A.157 - 158), and from the termination of Trey Cooper for falsifying a document, and the 90 day suspension of Nikki Lee for disruptive, insubordinate behavior at work, and leaving work early without permission, and she engaged in these behaviors on at least two other occasions (J.A. 161-163), and from Dawn Barfield signing off on a

24

written up, and from Benji Springs leaving premises without clocking out. (J.A. 164-165).

Appellant also showed a different attitude of the decision maker HR Manager, Brian Lee, when it came to his analysis of Caucasian misconduct versus African American conduct in terms of being understanding for a Caucasian employee going through a divorce, yet reprimanding an African American employee who gained custody of his children when their mother was killed. (J.A. 37-39). He also exhibited a nonchalant attitude toward an employee who "jokingly" called another employee a nigger. (J.A. 27-29).

Appellant worked in an atmosphere where he felt as though his Caucasian co-workers treated him differently, and he shared this feeling with his supervisor at the time, Michael Shepherd, who documented the conversation. (J.A. 176). This working atmosphere combined with the human resources manager's attitude about the severity of racial slurs being based on whether they were used jokingly or not (J.A. 27-29), give a clear picture of the racially hostile environment that Appellant and a number of African American employees were subjected to through employment with Appellee. And Appellant established that serious offenses are not immediately terminable as Appellee would like to advance as other serious and serial offenders of policy remain employed.

With respect to pretext, summary judgment is warranted when "no rational fact finder could conclude that the action was discriminatory." *Reeves v. Sanderson Plumbing Prods.*, 540 U.S. 133, 148 (2000). The Reeves court noted one kind of cases in which a plaintiff might not be entitled to a jury trial despite having introduced evidence establishing the falsity of Defendant's explanation of its actions. This would be one in which "the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* (*citing Aka v. Washington Hospital Center*, 156 F.3d 1284, 1291-1292 (D.C. Cir. 1998). *Aka*, the case cited by the Supreme Court, makes clear that this category of cases typically involves a situation where "an employer has a strong record of equal opportunity employment" such that "any inference of discrimination arising from the discrediting of the employer's explanation may be a weak one, and in some cases not strong enough to let a reasonable fact finder conclude that discrimination has occurred at all." *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1291 (D.C. Cir. 1998).

The record in this case falls far short of establishing that Defendant has a strong record of equal employment opportunity from Appellant's story of his attempts to be hired to the numerous complaints of discrimination lodged against this one employer. Despite casting doubt on the Appellee's position that

Appellant's serious infraction warranted termination (that doubt being the litany of other employees who routinely violated policy and remained employed), the lower court determined that it was not clear that "racial discrimination was part of Defendant's normal operating procedures" (J.A. 207).

The lower court cannot set a higher standard than what was required. Appellant advanced evidence that Appellee engaged in a pattern of practice of discrimination which should support Appellant's position that Appellee's proffered legitimate reason for terminating Appellant and not the other Caucasian employees committing Level II offenses is pretext. Appellee rests on the claim that Appellant violated the rule and should have been terminated. But asking the Seventh Circuit question "**whether the employer would have taken the same action had the employee been of a different race**...." *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157,158 (7th Cir. 1996), the Appellee would have been and should have been required to explain the difference in discipline not just the existence of Appellant's policy violation. The Appellant in turn has never been required and should never have been required to prove race was a part of the normal operating procedures (although it was the only differing factor in the different disciplinary procedures).

The Fourth Circuit held in *Sears*, where "there is a clear prima facie case of employment discrimination, a good deal of evidence of pretext casting serious doubt on the employer's proffered justification for its job action, and nothing to

27

prevent a rational fact-finder from finding that the employer was motivated by discriminatory reasons," the trial court "may not" require a plaintiff to satisfy a higher burden. *Sears*, 243 F.3d at 857 (*citing Reeves*, 530 U.S. at 147; *Hinson v. Clinch County*, 231 F.3d 821, 832 (11th Cir. 2000)).

### 2. *Prima Facie* Case Flexibility

The lower court's rigid application of the *prima facie* framework has precluded a valid claim of discrimination to advance. This rigidity is most shown in the lower court's dismissal of Appellant's claim on the grounds that Appellant failed to show that he was replaced by someone outside of his protected class.

Appellant was terminated on March 1, 2010. Appellee hired Jernika Byers, an African American temporary employee for Appellee, as a permanent employee on June 15, 2010 to allegedly replace Appellant 3 months after his termination (J.A. 67,75).

Some courts require the Appellant to show that the Appellee replaced the Appellant with someone outside of the Appellant's protected class as the fourth requirement of the prima facie case in discriminatory discharge cases. While it has long been advanced that this is the requirement per the *McDonnell Douglas* framework, footnote thirteen of *McDonnell Douglas*, clearly cautions, "The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from [appellant] is **not necessarily applicable in every**

28

**respect to differing factual situations**." *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n.13 (1973). *McDonnell Douglas* practically requires flexibility in the prima facie analysis of discrimination cases.

In Warch v. Ohio Casualty Ins. Co., the Fourth Circuit discussed the "flexibility" inherent in the *prima facie* case framework established in McDonnell Douglas framework. (*citing* Brinkley v. Harbour Recreation Club, 180 F.3d 598, 611 (4th Cir. 1999) (*holding that **"the McDonnell Douglas framework should not be applied in a 'rigid, mechanized, or ritualistic' manner"**); *and* Moore v. City of Charlotte, 754 F.2d 1100, 1105 (4th Cir. 1985) *(recognizing that the McDonnell Douglas framework is "less useful" in the context of an alleged discriminatory disciplinary decision than in the context of an alleged discriminatory hiring decision).*

Although, in *Brown v. McLean*, the United States Court of Appeals for the Fourth Circuit held that a appellant alleging discriminatory discharge must ordinarily show that someone who is not a member of the same protected class filled the appellant's position, this court also noted some exceptions to this requirement in limited situations, including situations in which "there has been a significant lapse of time between the plaintiff's application and its eventual decision to hire another individual within the same protected class, see, e.g., *Howard v. Roadway Express, Inc.*, 726 F.2d 1529, 1535 (11th Cir.1984) (finding

29

lapse of eleven months would significantly diminish reliability of subsequent

hiring as indicator of employer's intent at time it rejected plaintiff's application and

thus could not rule out inference of discrimination in connection with earlier denial

of plaintiff's application), or where the employer's hiring of another person within

the protected class is calculated to disguise its act of discrimination toward the

plaintiff, see, e.g., *Jones v. Western Geophysical Co.*, 669 F.2d 280, 284-85 (5th

Cir.1982)." *Brown v. McLean*, 159 F.3d 898 (4th Cir. Md. 1998).

Appellant's replacement being chosen June 15, 2010 to allegedly replace

Appellant 3 months after his termination (J.A. 67,75), could have been viewed, in a

light most favorable to Appellant as required by the summary judgment standard,

as a lapse of time significant enough to preclude ruling out the inference of

discrimination.

In addition, that requirement of proving replacement outside of protected

class, is not favored in some other circuits. In *Meiri v. Dacon*, 759 F.2d 989 (2d

Cir. N.Y. 1985), the United States Court of Appeals for the Second Circuit

explicitly stated that requiring a appellant in a discriminatory discharge case to

prove that her employer hired someone outside her protected class was

inappropriate and at odds with the policies underlying Title VII. Likewise, in

2000, in *Williams v. Trader Publishing Co.*, 218 F.3d 481, 485 (5th Cir. 2000), the

Fifth Circuit held that the appellant in a Title VII case did not need to show that her

employer replaced her with someone outside her protected class. In this case, the

appellant was a woman who alleged that her employer discharged her due to

gender discrimination in violation of Title VII. The Appellee employer contended

that the appellant could not establish a prima facie case because she could not

prove that her employer replaced her with a member of a non-protected class. The

court found that, although replacement with a person outside the appellant's

protected class is evidence of discriminatory intent, it is not essential to the

establishment of a prima facie case under Title VII. Similarly, in 1999, in *Pivirotto

v. Innovative Systems, Inc.*, 191 F.3d 344 (3d Cir. Pa. 1999) , the United States

Court of Appeals for the Third Circuit held that a appellant alleging discriminatory

discharge need not prove that she was replaced by someone outside her protected

class to establish a prima facie case. In this case, the appellant's employer fired

her but did not immediately replace her. Instead, a male employee assumed her

responsibilities. The court reasoned that the original fourth requirement in the

hiring context laid out in *McDonnell Douglas* was not that the appellant show that

the employer hired someone outside the appellant's protected class but rather that

the employer continued to seek applicants for the position. The court also made

reference to footnote thirteen of *McDonnell Douglas*, which stated that because the

facts vary in each Title VII case, the prima facie elements set out will not

necessarily be applicable to every case. In addition, the court focused on the

31

Supreme Court's explication of the purpose of the prima facie case in Title VII

employment discrimination cases. One main purpose of the prima facie case,

according to the Third Circuit, is **"to eliminate the most obvious, lawful reasons**

**for the Defendant's action."** Requiring an appellant to show the employer

replaced the appellant with someone outside the appellant's protected class,

however, does not eliminate any lawful reason why the employer may have

discharged the appellant. The court further stated that even if an appellant were

replaced by someone within the appellant's class, this fact alone would not

necessarily eliminate the possibility that the employer discriminated against the

appellant. To further bolster its holding that the replacement requirement was

inconsistent with Title VII, the court listed a series of circumstances in which an

employer may have replaced the appellant with someone within the appellant's

protected class but may have nevertheless discriminated against the appellant in

discharging the appellant. **One such situation is when an employer sets a higher**

**standard for employees who belong to a certain class than for those who are**

**outside of the protected class,** which is the exact circumstance in Appellant's and

other African American employees of Appellee.

"The facts necessarily will vary in Title VII cases, and the specification

above of the prima facie proof required from [appellant] is **not necessarily**

**applicable in every respect to differing factual situations**." *See McDonnell*

32

*Douglas Corp. v. Green*, 411 U.S. 792, 802 n.13 (1973). Therefore, in light of

McDonnell Douglas' clear qualification of the applicability of the *prima facie*

analysis, the lower court erred in its rigid analysis of Appellant's claim in light of

clear probative and material evidence to support that Appellant was meeting his

employer's expectations when he committed a Level II offense that led to his

termination while other similarly situated Caucasian employees were not

terminated for their Level II offenses.

## CONCLUSION

Sufficient evidence exists in the Record to rebut the allegedly legitimate

reason for the Appellant's termination. This is a case with significant evidence of a

company-wide policy of race discrimination regardless of supervisor as the

ultimate decision maker, the HR manager remained the same. The district court

erred when it applied a rigid application of *McDonnel Douglas* and dismissing this

case because the comparators were not similar enough, because Appellant had

previous infractions, and because Appellant was not replaced by a person outside

of his class. The district court improperly weighed evidence rather than determine

the existence of material evidence. Appellant has provided ample evidence to

answer the Seventh Circuit question, which should be the central inquiry to

disparate discharge cases, which is "whether the employer would have taken the

33

same action had the employee been of a different race….". *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157,158 (7th Cir. 1996). This case should be reversed and remanded for further **proceedings.**

## REQUEST FOR ARGUMENT

Appellant requests oral argument.

Respectfully Submitted,

WUKELA LAW FIRM

BY:      s/ Pheobe A. Clark
PHEOBE A. CLARK
Federal Id No. 9888
Attorney for Plaintiff
P. O. Box 13057
Florence, SC 29504
(843) 669-5634 (T)
(843) 669 5150 (F)

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No. 13-1434        **Caption:** Trey Z. Cooper v. DSM Nutritional Products, LLC

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)**
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

☒ this brief contains _7,879_ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐ this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☒ this brief has been prepared in a proportionally spaced typeface using _Microsoft Word 2007_ [*identify word processing program*] in _14 pt. Times New Roman_ [*identify font size and type style*]; **or**

☐ this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) Pheobe A. Clark _____

Attorney for Appellant _____

Dated: 05/28/2013 _____

# CERTIFICATE OF SERVICE

I certify that on  05/28/2013  the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Christopher G. Mackaronis          Jonathan P. Pearson
Brickfield, Burchette, Ritts & Stone, PC   Fisher and Phillips, LLP
1025 Thomas Jefferson Street, NW    Post Office Box 11612
Eighth Floor, West Tower           Columbia, SC   29211
Washington, DC   20007

s/ Pheobe A. Clark                 05/28/2013

Signature                          Date