No. 13-1434

## UNITED STATES COURT OF APPEALS
for the FOURTH CIRCUIT

### TREY Z. COOPER

Plaintiff-Appellant

v.

### DSM NUTRITIONAL PRODUCTS, L.L.C.

Defendant-Appellee

On Appeal from the U.S. District Court for the
District of South Carolina at Florence

## BRIEF OF APPELLEE DSM NUTRITIONAL PRODUCTS, L.L.C.

Christopher G. Mackaronis
BRICKFIELD, BURCHETTE, RITTS
& STONE, PC
1025 Thomas Jefferson Street, NW
Eighth Floor, West Tower
Washington, DC 20007
(202) 342-0800 (phone)
(202) 342-0807 (fax)

Jonathan P. Pearson
FISHER AND PHILLIPS LLP
Post Office Box 11612
South Carolina 29211
(803) 255-0000 (phone)
(803) 255-0202 (fax)

*Attorneys for Appellee*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
### DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is not required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No.  13-1434     Caption: Trey Z. Cooper v. Martek Biosciences Kingstree Corp.

Pursuant to FRAP 26.1 and Local Rule 26.1,

 Martek Biosciences Kingstree Corporation currently doing business as
(name of party/amicus)

(d/b/a) DSM Nutritional Products, LLC

who is    Appellee         , makes the following disclosure:
    (appellant/appellee/amicus)

1.   Is party/amicus a publicly held corporation or other publicly held entity?    YES   NO

2.   Does party/amicus have any parent corporations?                    YES   NO
     If yes, identify all parent corporations, including grandparent and great-grandparent
     corporations:  DSM Nutritional Products, LLC is a single member LLC of which
DSM Pharmaceutical, Inc. is the sole member. DSM Pharmaceutical, Inc. is
owned by DSM Holding Company USA, Inc. as the sole shareholder. DSM Holding
Company USA, Inc. is owned by DSM Finance B.V. as the sole shareholder, which
is a wholly owned subsidiary of Koninklijke DSM N.V.., which is publicly traded
company on the European market (a/k/a Royal DSM N.V.).
3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
     other publicly held entity?                                YES   NO
     If yes, identify all such owners:
     Wholly owned by Royal DSM NV.

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☒ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☒ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☒ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____   Date: _June 25, 2013_

Counsel for: _____Appellee_____

## CERTIFICATE OF SERVICE
****************************

I certify that on __6/25/2013__ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

> Ms. Pheobe A. Clark
> Wukela Law Firm
> 403 Second Loop Road
> P.O. Box 13507
> Florence, SC 29504-3057

_____        6/25/2013
(signature)                        (date)

07/19/2012                - 2 -
SCC

# TABLE OF CONTENTS

**TABLE OF CONTENTS**...........................................................................................iii

**TABLE OF AUTHORITIES**...................................................................................iv

**SUBJECT MATTER AND JURISDICTION**.......................................................1

**STATEMENT OF ISSUES**....................................................................................1

**STATEMENT OF THE CASE**..............................................................................1

**STATEMENT OF FACTS**.....................................................................................5

**SUMMARY OF ARGUMENT**............................................................................11

**ARGUMENT**........................................................................................................12

I.     THE APPELLANT FAILED TO ESTABLISH TRIABLE ISSUES
       REGARDING HIS *PRIMA FACIE* CASE ON SUMMARY
       JUDGMENT.................................................................................................12

       A.    The Title VII Analytical Framework. ......................................12

       B.    The Appellant Was Not Meeting DSM's Legitimate
             Expectations. ...........................................................................14

       C.    There Is No Evidence To Satisfy The Fourth Element
             Of The Prima Facie Case............................................................17

       D.    There Is No Evidence Suggesting That DSM's Legitimate
             Non-discriminatory Reason Was Pretextual ............................22

**CONCLUSION**.....................................................................................................24

**REQUEST FOR ARGUMENT**...........................................................................25

**CERTIFICATE OF COMPLIANCE**..................................................................26

**CERTIFICATE OF SERVICE**...........................................................................27

## TABLE OF AUTHORITIES

### Cases

*Barber v. Hosp. Corp. of Am.*, 977 F.2d 872 (4th Cir. 1992) ................................... 12

*Blair v. Colonnas Shipyard, Inc.*, 52 F. Supp. 2d 687, 694 (E.D. Va. 1999),
    *aff'd mem.,* 203 F.3d 819 (4th Cir. 2000)........................................................ 16, 22

*Brinkley v. Harbour Recreation Club*, 180 F.3d 598 (4th Cir. 1999)............... 13, 14

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................ 12

*DeJarnette v. Corning, Inc.*, 133 F.3d 293 (4th Cir. 1998)...................................... 15

*Gaither v. Wake Forest Univ.*, 129 F. Supp. 2d 863 (M.D.N.C. 2000) .................. 16

*Hawkins v. Pepsico, Inc.*, 203 F.3d 274 (4th Cir. 2000) .......................................... 14

*Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277 (4th Cir. 2004)
    (en banc)...................................................................................................... passim

*Holland v. Wash. Homes, Inc.*, 487 F.3d 208 (4th Cir. 2007)................................. 12

*Hoyle v. Freightliner, L.L.C.*, 650 F.3d 321 (4th Cir. 2011).............................. 18, 19

*Hughes v. Bedsole*, 48 F.3d 1376 (4th Cir. 1995) .................................................... 21

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977)................................ 23

*Karpel v. Inova Health Sys. Servs.,* 134 F.3d 1222 (4th Cir. 1998)............ 13, 16, 21

*King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192 (4th Cir. 1998)................ 22

*Koski v. Standex Int'l Corp.*, 307 F.3d 672 (7th Cir. 2002).................................... 19

*Laing v. Fed. Express Corp.*, 703 F.3d 713 (4th Cir. 2013) ................. 13, 18, 19, 21

*Lightner v. City of Wilmington*, 545 F.3d 260 (4th Cir. 2008)................................. 21

*Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742 (4th Cir. 1998).......................... 23

*Mathews v. Giant Food, Inc.*, 187 F. Supp. 2d 486 (D. Md. 2002) ........................ 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).............. 12

*McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337 (1991)........................................ 14

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ...................... 1, 3, 11, 13

*Miles v. Dell, Inc.*, 429 F.3d 480 (4th Cir. 2005)........................................ 14, 17, 18

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)......................... 19

*Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510 (4th Cir. 2006) ................................... 13

*White v. BFI Waste Servs., L.L.C.*, 375 F.2d 288 (4th Cir. 2004)..................... 14, 17

## Statutes

28 U.S.C. § 1291 .................................................................................................... 1

28 U.S.C. § 1331 .................................................................................................... 1

28 U.S.C. § 636(b)(1)(A) ....................................................................................... 2

42 U.S.C. § 2000e................................................................................................... 1

## Rules

D.S.C. Civ. R. 73.02(B)(2)(g) ................................................................................ 2

## SUBJECT MATTER AND JURISDICTION

The Appellant's suit in the district court was filed pursuant to Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Subject matter was conferred on

the district court by 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 1291, this Court

has appellate jurisdiction over the final judgment of the district court dated March

4, 2013.

## STATEMENT OF ISSUES

Under the burden-shifting method of proof established by *McDonnell

Douglas Corp. v. Green*, 411 U.S. 792 (1973), did the Appellant create a genuine

dispute of material fact that (a) he was performing up to his employer's legitimate

expectations, (b) similarly situated employees outside the protected class were

treated more favorably, and (c) the employer's articulated reason for the

challenged termination was a pretext for discrimination?

## STATEMENT OF THE CASE

This is an appeal from a district court order granting summary judgment to

Appellee DSM Nutritional Products, L.L.C. ("DSM") on the Appellant's claim that

he was terminated from employment based on his race in violation of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e (2012) ("Title VII").

The Appellant, Trey Z. Cooper ("Cooper"), filed suit on September 22,

2011, in the Federal District Court for the District of South Carolina, Florence

Division. (Joint Appendix 7 (hereinafter "J.A.").)  In his complaint, Cooper alleged

that he was treated differently on the basis of his race "[s]ince the beginning of his

employment and throughout the course of his employment" with DSM.  (J.A. 8.)

Cooper alleged a "pattern and practice of discrimination on the basis of race" with

regard to "terms, privileges and conditions of employment" (J.A. 9), and with

respect to DSM's hiring process (J.A. 10).  Cooper also alleged that his termination

was unlawfully motivated by his race.  (J.A. 10.)

On August 24, 2012, following the completion of discovery, DSM moved

for summary judgment.  (J.A. 4; D.E. 26.)  After briefing by the parties, and

pursuant to 28 U.S.C. § 636(b)(1)(A) and D.S.C. Civ. R. 73.02(B)(2)(g), United

States Magistrate Judge Thomas E. Rogers, III, issued a Report and

Recommendation on January 25, 2013 (hereinafter "Report").  (J.A. 177.)  In his

Report, Magistrate Rogers noted that the Appellant's complaint alleges

"discrimination in hiring and training."  (J.A. 189.)  But he concluded that those

allegations were not properly before the court because they were not included in

the administrative charge of discrimination that the Appellant had filed with the

Equal Employment Opportunity Commission, and also because they had not been

timely raised.  (J.A. 188-89; *see also* J.A. 107 (charge of discrimination).)  In

- 2 -

addressing the Appellant's claim that his termination was motivated by his race,

and noting the absence of any direct evidence of discrimination, Magistrate Rogers

applied the "burden shifting proof scheme established in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). (J.A.

189-90.) As the magistrate explained, in a termination case, the plaintiff must

present facts showing that (1) he is a member of a protected class; (2) he suffered

an adverse employment action; (3) he was performing his job duties at a level that

met his employer's legitimate expectations at the time of the adverse employment

action; and (4) the position remained open or was filled by a similarly qualified

applicant outside the protected class. (J.A. 190 (citing *Hill v. Lockheed Martin*

*Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc)).) As the

magistrate explained, "[t]he fourth element can also be met by showing that

similarly-situated employees outside the protected class received more favorable

treatment, or other circumstances giving rise to a reasonable inference of unlawful

discrimination." (J.A. 190 (citations omitted).)

The magistrate found that the Appellant failed to establish two prongs of his

*prima facie* case. First, he found that the Appellant "fails to point to sufficient

evidence to create an issue of fact as to whether he was performing at a level that

met his employer's legitimate expectations." (J.A. 192.) Second, the magistrate

found that the Appellant had failed to meet the fourth prong of the *prima facie* case

- 3 -

because (a) he was, in fact, replaced by a black female (J.A. 192), and (b) he failed

to demonstrate that "other employees outside the protected class were treated

differently for similar behavior" (J.A. 193).  Moving beyond the *prima facie* case,

the magistrate also concluded that DSM had articulated a legitimate, non-

discriminatory reason for the Appellant's termination – his falsification of

laboratory test results – and that the Appellant had failed to demonstrate that

DSM's reason for his termination was a pretext for discrimination.  (J.A. 195.)

Appellant timely filed objections to the magistrate's Report.  (J.A. 6; D.E.

39.)  The Appellant objected to the magistrate's findings that he had failed to

create an issue of fact whether (a) he was meeting DSM's legitimate expectations,

(b) he had been replaced by someone outside the protected class, (c) similarly

situated employees had been treated differently, and (d) racial discrimination was

part of DSM's standard operating procedure.  (J.A. 6; D.E. 39 at 6.)  The Appellant

did not object to the magistrate's finding that his claims about discriminatory

hiring and training were time-barred.  (J.A. 202 n. 3.)

The district court agreed with the magistrate judge that the Appellant had not

created a question of fact that his performance was satisfactory.  (J.A. 203-04.)  As

the district court ruled, "Plaintiff has offered no evidence that it was 'illegitimate'

for Defendant to expect either that its employees maintain positive performance

evaluations, or, most critically, that employees not falsify documents.  (J.A. 204.)

And, like the magistrate, the district court concluded that the Appellant had not produced evidence showing that "similarly situated" employees were treated differently. (J.A. 205.) As the district court concluded, "Plaintiff has failed to present sufficient evidence to show that other employees were similarly situated in 'all relevant respects' to satisfy the fourth element of the *prima facie* standard." (J.A. 205.) Further, the district court rejected the Appellant's argument that he met his burden of demonstrating pretext by showing that racial discrimination was "widespread" at DSM. (J.A. 206.) The district court ruled, as had the magistrate, that the Appellant "merely discusses other employees who have filed charges of discrimination, and thus 'Plaintiff fails to present evidence sufficient to show that racial discrimination was part of Defendant's normal operating procedures.'" (J.A. 207 (quoting J.A. 196 (Magistrate's Report and Recommendation)).) The district court entered summary judgment for DSM on March 4, 2013 (J.A. 208), and the Appellant timely filed a notice of appeal (J.A. 209).

## STATEMENT OF FACTS

DSM operates a facility in Kingstree, South Carolina, where it produces products made from microalgae. (J.A. 64, 177.) Because many of the products are used as food additives, it is important that they meet stringent quality standards for purity, color, and odor. (J.A. 64, 177.) To ensure quality, DSM operates a Quality Control Laboratory on site staffed by trained analysts and technicians. (J.A. 64,

- 5 -

178.) The analysts working in the laboratory are trained to perform a wide variety
of tests on different products. (J.A. 64, 178.) Maintaining accurate records is an
essential part of the testing process, as the DSM laboratory is subject to review by
customers and oversight by the federal Food and Drug Administration. (J.A. 64,
178.)

Appellant was hired by DSM on February 6, 2006, as a Quality Control
Analyst I. (J.A. 127.) His supervisor at the time of his hire was Michael Shepherd.
(J.A. 127.) On September 1, 2009, Shepherd moved into another position and
Michelle Miller became the Manager of the Quality Control Laboratory and the
Appellant's supervisor. (J.A. 64, 178.) It was Miller who initiated the Appellant's
termination. (J.A. 40, 66.)

The circumstances that precipitated the Appellant's termination are set forth
in detail in the written Employee Corrective Action Notice dated February 26,
2010. (J.A. 40-42.) On Thursday, February 25, 2010, Miller instructed the
Appellant to print and complete a Material Control Specification ("MCS") form for
a product identified as Batch 98-5827F. (J.A. 40, 178.) An MCS is a summary
sheet containing test results on a batch of product. (J.A. 178.) All but two of the
tests had already been performed and were recorded in an electronic program
called a "Batch Manager." (J.A. 65.) Miller sat with Appellant and explained to
him how to fill out the form and where to locate most of the data. (J.A. 65.) The

- 6 -

Appellant was able to record the data on the MCS form by pulling it "right out of the computer," and transferring it to the MCS form. (J.A. 92, 178.) The only two tests that the Appellant was required to perform to complete the MCS form were tests for color and odor. (J.A. 65.) In order to perform the color and odor tests, the Appellant needed to actually pull the sample, observe the color and smell the sample. (J.A. 65.) As Miller explained to the Appellant, the color and odor tests are important because customers have different preferences, depending on how the product is to be used or packaged. (J.A. 40, 65-66.) Appellant told Miller that he knew where to locate the sample. (J.A. 66.)

The following day, Miller found the completed MCS form in her mailbox (J.A. 108-09) and proceeded to verify the data on it (J.A. 40). While Miller would not customarily verify MCS data, she did so on this occasion because the Appellant had told her that he had not done one before. (J.A. 55-56.) For the color and odor tests, the Appellant entered "typical," and initialed the entries along with the date. (J.A. 108 ("TZC 2/25/10").) Appellant signed the second page of the MCS form. (J.A. 109.) When Miller attempted to retrieve the sample to check the color and odor test results, she could not locate it. (J.A. 40, 66, 180.) She then telephoned the Appellant to find where the sample was located. (J.A. 40, 180.) During the call, the Appellant admitted that he did not retrieve and test the sample, but instead had assumed the results would be "typical" and made those entries on

- 7 -

the MCS form. (J.A. 41.) Miller later determined that the sample was not even at the Kingstree location. (J.A. 66, 180.) During his deposition, the Appellant admitted that he did not test the sample, that Miller had advised him of the importance of the color and odor tests, and that he was unaware of anyone else who had intentionally falsified data on an MCS form. (J.A. 97-102, 180-82.) Based on his admission that he had falsified the MCS entries, Miller made the determination to recommend the Appellant's termination. (J.A. 66.) As she explained, "[t]he integrity of our analysts is very important in a Quality Control Lab. We get audited by our customers, by government agencies. We can – we have to be able to 100 percent stand behind any data that we have." (J.A. 63.) Miller's recommendation for termination was accepted by the Human Resources Department. (J.A. 66.) The role of Human Resources is to review any written corrective action notices to ensure they are legible and that the action proposed by the manager "is reasonable based on the infraction and consistent with other actions that have taken place." (J.A. 18-19.) Miller selected a black female (Jernika Byers) to fill the Appellant's vacated position. (J.A. 67.)

The Appellant's termination notice referenced his prior performance and disciplinary issues. (J.A. 41.) Since the time of his hire in 2006, Appellant had received three annual performance evaluations, each of which rated him as either "Needs Improvement" or "Unsatisfactory." His first evaluation in September 2007

rated him as "Needs Improvement." (J.A. 127.) His second evaluation in

November 2008 rated him as "Unsatisfactory." (J.A. 128.) And the last evaluation

he received just prior to his termination rated him as "Needs Improvement." (J.A.

130.) And apart from his annual evaluations, his work record reflected other

concerns. On October 3, 2007, the Appellant received a written Employee

Corrective Action Notice for his repeated failure to complete "time allocation"

sheets required of DSM Quality Control Analysts. (J.A. 117, 183.) The Corrective

Action Notice had been preceded by a series of e-mails from his supervisor,

Michael Shepherd, reminding him of this weekly obligation. (J.A. 113-15.) The

Appellant responded to the Corrective Action Notice by calling it "childish and

unprofessional" (J.A. 118) and concluding that "this event are illrelevant (sic) to

Trey Cooper doing is (sic) job" (J.A. 119, 183).

The Appellant also encountered time and attendance issues. On November

14, 2007, Appellant's supervisor advised all the employees under his supervision

that he would begin enforcing DSM's time and attendance policy. (J.A. 122.)

Under the policy, employees were not permitted six or more late arrivals in a

rolling six-month period, or ten or more in a rolling twelve-month period. (J.A.

122) Thereafter, e-mails from the Appellant's supervisor advised him of his

ongoing status. (J.A. 123-24.) When the Appellant was late for work six times in

the months of February and March, 2008, he received a written disciplinary action

- 9 -

and was placed on probation for ninety days. (J.A. 125-26.) The Appellant's response was that "Martek [DSM] has changed the time on their clocks." (J.A. 125-26.)

Finally, the falsification of the MCS form was not the first time that the Appellant had been disciplined for document falsification. In January 2007, supervisor Shepherd e-mailed all of his subordinates advising them that "if you leave the plant ground for any reason you are to clock out." (J.A. 43.) As Shepherd explained, "the company can look at you as falsifying company records, since you are signing your time sheet stating you were on the site for the whole 12hrs." (J.A. 43.) Later in the year, the Appellant failed to bring his badge for electronic clock in for three consecutive days. (J.A. 120.) Consequently, he was required to complete a "Time Clock Punch Adjustment Form." "He completed the form by recoding (sic) the time he reported for work in the morning and left in the afternoon." (J.A. 120.) But the "Gate Log Report" revealed that he had left the plant premises each of the three days for a total of one hour and forty-five minutes, a discrepancy which, if left undiscovered, would have resulted in overpayment of wages. (J.A. 120.) The Appellant was placed on six month probation for falsification of company records. (J.A. 121.)

- 10 -

## **SUMMARY OF ARGUMENT**

On summary judgment, the Appellant failed to create triable issues of fact regarding his *prima facie* case under the burden-shifting method of proof established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The Appellant's admitted falsification of the MCS form and his three consecutive unsatisfactory performance evaluations prevented him from demonstrating that he was performing up to DSM's legitimate expectations.

Nor did the Appellant create a triable issue that similarly situated employees outside the protected class were treated more leniently than he was. There was no proof that any other employees had ever falsified laboratory tests results. Indeed, there was no proof that any employees met the "similarly situated" standards of this Circuit. Nor was there any proof of bias by Michelle Miller, the Appellant's supervisor who initiated his termination. Indeed, the summary judgment proof established that Miller replaced the Appellant by hiring a minority female.

Finally, there was no proof that DSM's articulated non-discriminatory explanation for the challenged termination – the Appellant's falsification of laboratory tests results – was a pretext for discrimination. The Appellant admitted the falsification, and there was no proof on summary judgment that DSM did not have a bona fide concern over the integrity of its laboratory reports, particularly in light of oversight by customers and the Food and Drug Administration.

## ARGUMENT

### I. THE APPELLANT FAILED TO ESTABLISH TRIABLE ISSUES REGARDING HIS *PRIMA FACIE* CASE ON SUMMARY JUDGMENT.

The Court reviews the trial court's decision on summary judgment de novo,

applying the same standard as the district court. *Holland v. Wash. Homes, Inc.*,

487 F.3d 208, 213 (4th Cir. 2007). Summary judgment is proper if the non-

moving party fails to establish an essential element of any cause of action upon

which the non-moving party has the burden of proof. *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986). Once the moving party has brought into question whether

there is a genuine dispute for trial on a material element of the non-moving party's

claims, the non-moving party bears the burden of coming forward with specific

facts which show a genuine dispute for trial. *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574 (1986). While the facts and inferences to be drawn

therefrom must be viewed in the light most favorable to the non-moving party, the

non-moving party may not rely on beliefs, conjecture, speculation or conclusory

allegations to defeat a motion for summary judgment. *Barber v. Hosp. Corp. of*

*Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992).

#### A. The Title VII Analytical Framework.

The Appellant alleges that he was terminated due to his race in violation of

Title VII. A Title VII plaintiff may establish a claim of discrimination by

demonstrating through direct or circumstantial evidence that race discrimination

- 12 -

motivated the employer's decision to terminate him. *See Hill*, 354 F.3d at 284. "Direct evidence encompasses 'conduct or statements' that both (1) 'reflect directly the alleged discriminatory attitude,' and (2) 'bear directly on the contested employment decision.'" *Laing v. Fed. Express Corp.*, 703 F.3d 713, 717 (4th Cir. 2013) (quoting *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006)). The Appellant did not produce any direct evidence of race discrimination to the district court. (J.A. 189, 201.) Absent direct evidence, a Title VII plaintiff may proceed by producing circumstantial evidence under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Laing*, 703 F.3d at 718-19.

"*McDonnell Douglas* first requires that the plaintiff establish a prima facie case of discrimination by a preponderance of the evidence." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999). To establish a *prima facie* case that he was terminated because of his race, the Appellant had to show: (1) he is a member of the protected class, (2) he was qualified for the job and was meeting the employer's legitimate expectations, (3) he was discharged despite his qualifications and performance, and (4) following his discharge, his position remained open to similarly qualified applicants outside of his protected class. *Id.; see also Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1228 (4th Cir. 1998). The fourth element can also be met by showing that similarly-situated employees

- 13 -

outside the protected class received more favorable treatment, or other

circumstances giving rise to a reasonable inference of discrimination. (J.A. 190

(citing *White v. BFI Waste Servs., L.L.C.*, 375 F.2d 288, 295 (4th Cir. 2004); *Miles*

*v. Dell, Inc.*, 429 F.3d 480, 486-87 (4th Cir. 2005)).)

    If a plaintiff establishes a *prima facie* case, the burden shifts to the employer

to articulate a legitimate, nondiscriminatory reason for the termination. *See*

*Brinkley*, 180 F.3d at 607. If the employer meets this burden of production, then

the plaintiff must prove that the "proffered reason was mere pretext and that race

was the real reason for [appellant's] termination." *Hawkins v. Pepsico, Inc.*, 203

F.3d 274, 278 (4th Cir. 2000). To avoid judgment as a matter of law on this issue,

the plaintiff must establish "a legally sufficient evidentiary basis for a reasonable

jury to find for" the plaintiff. *Id.* at 278-79. "[S]ummary judgment or a directed

verdict is mandated where the facts and the law will reasonably support only one

conclusion." *Id.* at 279 (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337,

356 (1991)).

    B. The Appellant Was Not Meeting DSM's Legitimate Expectations.

    Both the magistrate judge and the district court concluded that the Appellant

failed to create a triable issue that he was meeting DSM's legitimate expectations.

(J.A. 191, 203.) The Appellant "had a history of negative performance

evaluations." (J.A. 203.) Just three months before the Appellant's document

- 14 -

falsification, the Appellant received an annual performance evaluation which rated

him as "Needs Improvement." (J.A. 130.) The appraisal specifically addressed his

"handling of paper work and following up on e-mails," and indicated that "he

needs to continue to improve in this area *to meet the requirements and expectations*

*for an analyst.*" (J.A. 130 (emphasis added).) The 2009 appraisal was prepared by

supervisor Michelle Miller. (J.A. 131.) At the end of the preceding year (2008),

the Appellant's annual evaluation rated his performance as "Unsatisfactory." (J.A.

128.) And the year before that (2007), his performance was rated as "Needs

Improvement." (J.A. 127.) Since the time of his hire in 2006, the Appellant

received three annual performance evaluations, each of which indicated that he

was not meeting DSM's expectations. The Appellant's evaluations are fatal to his

claim that he was meeting DSM's legitimate expectation at the time of his

termination. As the district court concluded, "[c]ertainly, a history of poor

performance reviews leading up to the Plaintiff's termination is relevant to whether

he was meeting [DSM's] legitimate expectations." (J.A. 203.) In termination

cases, "[i]t is the perception of the decision maker which is relevant, not the self

assessment of the plaintiff." *Hawkins*, 203 F.3d at 280 (quoting *DeJarnette v.*

*Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998).)

In addition to the performance appraisals, the Appellant's admitted

falsification of the MCS Form also demonstrates that he was not meeting DSM's

- 15 -

legitimate expectations. DSM's Kingstree facility produces products from
microalgae, most of which are used as food additives. (J.A. 64.) The facility is
subject to oversight by the federal Food and Drug Administration, as well as
inspections and audits by DSM's customers. (J.A. 64.) Consequently, DSM
maintains a Quality Control Laboratory on site to ensure stringent quality standards
for purity, color and odor. (J.A. 64.) As supervisor Miller testified, "[t]he integrity
of our analysts is very important in a Quality Control Lab. We get audited by our
customers, by government agencies. We can – we have to be able to 100 percent
stand behind any data that we have." (J.A. 63.) The Appellant confirmed that
performing a thorough laboratory analysis on customer products was a "very, very
important function of a lab." (J.A. 98, 204.) The Appellant's admitted
falsification of vital test results further demonstrates his failure to meet DSM's
legitimate expectations. *See Karpel*, 134 F.3d at 1228 (holding that a plaintiff who
"was repeatedly tardy, had multiple inadequate medpasses, and failed to submit
any of her required monthly summaries" failed to show satisfactory performance);
*Mathews v. Giant Food, Inc.*, 187 F. Supp. 2d 486, 489 (D. Md. 2002) (holding
plaintiff's violation of company policy demonstrates unsatisfactory performance);
*Gaither v. Wake Forest Univ.*, 129 F. Supp. 2d 863, 867 (M.D.N.C. 2000) (same);
*Blair v. Colonnas Shipyard, Inc.*, 52 F. Supp. 2d 687, 694 (E.D. Va. 1999), *aff'd
mem.,* 203 F.3d 819 (4th Cir. 2000) ("[S]ince [employee] violated policies that the

- 16 -

[employer] considered 'very important,' he did not perform his job satisfactorily and cannot establish a prima facie case of race discrimination.").

C.    There Is No Evidence To Satisfy The
      Fourth Element Of The Prima Facie Case.

On summary judgment, the Appellant could satisfy the fourth element of his *prima facie* case by showing that similarly-situated employees outside the protected class received more favorable treatment, or other circumstances giving rise to a reasonable inference of discrimination. (J.A. 190 (citing *White*, 375 F.2d at 295; *Miles*, 429 F.3d at 486-87).) Satisfaction of the fourth element is necessary to show that "the relevant decisionmaker at [DSM] harbored . . . a discriminatory motivation." *Hill*, 354 F.3d at 298. It is undisputed that the Appellant's termination was initiated by his supervisor, Michelle Miller, immediately after she learned of the falsification of the MCS Form. And there was no summary judgment evidence from which a discriminatory motive can be attributed to Miller.

First, following the Appellant's termination, he was replaced by a black female by the name of Jernika Byers. (J.A. 67, 69, 77.) Miller had hired Byers as a temporary employee before the Appellant's termination but did not have authorization for a permanent full-time position. (J.A. 67.) After the Appellant was terminated, she hired Byers as a permanent employee. (J.A. 67.) "[W]hen someone within the protected class is hired as a replacement, that fact ordinarily gives rise to an inference that the defendant did not fire the plaintiff because of

- 17 -

[his] protected status." *Miles*, 429 F.3d at 488. While the Court has recognized

that there may be narrow exceptions to this inference on non-discrimination, *id.* at

488-89, none of them are applicable here. Miller hired the Appellant's

replacement as a temporary employee prior to his termination, and hired her as a

permanent employee just months after his termination. (J.A. 67.)

Second, there are no similarly situated employees that were treated more

leniently by Miller. The Appellant admitted that he was "unaware of any other

employee who falsified data for tests that were never conducted." (J.A. 194 (citing

J.A. 67, 70-71.) This admission provided further support for the entry of summary

judgment by the district court. *Laing*, 703 F.3d at 713 (holding that there are no

similarly situated employees in the absence of proof of other employees who

violated the same company policy); *Hoyle v. Freightliner, L.L.C.*, 650 F.3d 321,

337 (4th Cir. 2011) (affirming district court holding that plaintiff failed to prove

her prima facie case "because she has not identified any similarly situated

employees who were treated more favorably while on a last chance agreement.").

As he did on summary judgment, Appellant argues on appeal that non-

minority employees have committed "Level II" offenses and have not been

terminated, thereby creating an inference of discrimination. But the Appellant's

examples do not create an inference of discrimination, primarily because none of

them pertain to Michelle Miller. In order to demonstrate an intent to discriminate,

the plaintiff "must produce sufficient evidence upon which one could find that 'the protected trait . . . actually motivated the employer's decision.'" *Hill*, 354 F.3d at 286 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141(2000)). For this reason, the pertinent inquiry is "whether the decisionmaker, as opposed to other managers or subordinates, evaluated the aggrieved employee based upon discriminatory criteria." *Hill*, 354 F.3d at 286 (citing *Koski v. Standex Int'l Corp.*, 307 F.3d 672, 678 (7th Cir. 2002)). Since evidence of the other Level II offenses does not relate to Miller's motivation – one way or another – it is not evidence that her reliance on the plaintiff's admitted falsification of laboratory reports is a pretext for racial discrimination. And the holdings in *Laing* and *Hoyle* suggest that the Appellant's failure to identify anyone else who falsified laboratory test forms also precludes him from establishing a *prima facie* case because there are no examples of comparable conduct. *See Laing*, 703 F.3d at 713; *Hoyle*, 650 F.3d at 337.

With no proof regarding the same offense, or the same supervisor, Appellant argues that DSM's varying treatment of employees who committed "Level II" offenses gives rise to an inference of discrimination. The plaintiff's argument is premised on a portion of DSM's Employee Handbook addressing employee discipline. (J.A. 159.) The Handbook identifies Level I and Level II offenses. Level II offenses are introduced with the following language:

> Level II offenses *may warrant an employee's termination. Although each*
> *case will be considered in light of its particular background and*
> *circumstances,* the following are examples of Level II offenses (this list is
> not all-inclusive) . . . ."

(J.A. 159 (emphasis added).)  The Handbook identifies fifteen (15) possible Level

II offenses, including such diverse offenses as failure to call in, unexcused absence,

leaving work without permission, damage to company property, discrimination,

weapons possession and falsification of records.  (J.A. 159-60.)  In effect, the

Appellant argues that employees guilty of any of Level II offenses must be treated

identically, and the failure to do so gives rise to an inference of discrimination.

Appellant's argument is flawed.

Factually, plaintiff's argument contradicts the express language in the

Handbook.  While the Appellant argues that all Level II offenses should be treated

identically, the language of the Handbook makes no such commitment.  The

Handbook does not *require* termination for a Level II offense (J.A. 159 ("*may*

*warrant* an employee's termination")), and expressly indicates that "each case will

be considered in light of its particular background and circumstances."  (J.A. 159.)

As with most employers, DSM has reserved the right to approach serious

disciplinary issues on a case-by-case basis.

Legally, the Appellant's argument fails for two independent reasons.  In

order to raise an inference of discrimination, "[t]he similarity between comparators

and the seriousness of their respective offenses must be clearly established in order

to be meaningful." *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir.

2008). The factual circumstances of the comparators must be "substantially

similar." *Hughes v. Bedsole*, 48 F.3d 1376, 1385 (4th Cir. 1995). The plaintiff

would have the Court ignore this threshold factual requirement and hold, as a

matter of law, that the entire range of Level II offenses described in the DSM

Handbook are "substantially similar." The law in this Circuit is precisely to the

contrary. Moreover, in comparing himself with other employees who committed

dissimilar offenses, Appellant ignores both his disciplinary record as well as his

sub-par evaluations, all of which further demonstrate that he was not "similarly

situated" to any of the employees to which he attempts comparison. *See Karpel*,

134 F.3d at 1228 ("Karpel presents no evidence showing that any other employee

had nearly the same problems as she did across the board.").

The Appellant's claim that all Level II offenses should be treated identically

would render meaningless "the most salient aspects of [the *McDonnell Douglas*]

framework – comparator evidence . . . ." *Laing*, 703 F.2d at 719. Appellant's

argument would lump together employees in different jobs, working for different

managers, complying with different performance standards, and guilty of disparate

offenses. No meaningful inferences could possibly be drawn regarding Michelle

Miller's motivation from such a diverse group of employees.

- 21 -

Finally, the Appellant's effort to change the spotlight from Miller to the human resource department is unavailing. (Appellant's Br. 25 (alleging a "different attitude" of HR Manager Brian Lee).) It is undisputed that Miller initiated the termination, so it is her motivation that matters for a Title VII analysis. Review of a termination by human resources is standard practice for an employer with hundreds of employees, as is the case here. (J.A. 23 (HR review for consistency with Employee Handbook and fairness).) As the human resource manager testified, he saw no mitigating circumstances to change Miller's decision to terminate the Appellant. (J.A. 32; *see also Hill*, 354 F.3d at 290 (holding that the focus is on the individual "principally responsible for the contested employment decision").)

D.    There Is No Evidence Suggesting That DSM's
      Legitimate Non-discriminatory Reason Was Pretextual.

As the district court noted, this Circuit has previously held that an employee's falsification of documents is a legitimate, non-discriminatory reason for termination. (J.A. 206 (citing *King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 198 (4th Cir. 1998); *Blair*, 52 F. Supp. 2d at 695).) Having admitted the falsification, the Appellant argued to the district court (J.A. 206) and now on appeal that his proof of a pattern of discrimination at DSM was sufficient to create a triable issue about pretext (Appellant's Br. 24-28). But the Appellant has no proof of isolated incidents of race discrimination, much less a pattern. (J.A. 206).

- 22 -

Indeed, the Appellant merely discusses other employees who have filed charges of discrimination (Appellant's Br. 11), an argument properly rejected by the district court (J.A. 206).

In order to prove a "pattern and practice" of discrimination, the plaintiff must "prove more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977). Instead, the plaintiff must "establish by a preponderance of the evidence that racial discrimination was the company's standard operating procedure – the regular rather than the unusual practice." *Id.* Although in some cases, a Title VII plaintiff may "be able to use statistical evidence of a pattern or practice of discrimination to help establish pretext, this is not such a case." *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 764 (4th Cir. 1998).

The Appellant's allegation of a pattern and practice of race discrimination by DSM is unavailing for multiple reasons. First, he has no statistics – much less relevant and admissible statistical evidence --of work place disparities based on race. For example, although contesting his termination, the Appellant has not supplied any proof suggesting that DSM terminates minority employees at greater rates than others for the same offenses. Indeed, the "anecdotes" the plaintiff cites in support of his alleged "pattern and practice" have nothing at all to do with terminations. And since none of the anecdotes involved the same supervisor or the

- 23 -

same misconduct, they have no relevance to the Appellant's termination. (*See,*

*e.g.*, Appellant's Br. 24-25 (Nicki Lee, different supervisor and different conduct;

Dawn Barfield, different supervisor and different conduct; and Benjie Spring,

different supervisor, different conduct).)

## CONCLUSION

For the foregoing reasons, Appellee DSM respectfully requests that the

Court affirm the judgment of the district court which entered summary judgment in

favor of DSM and against the Appellant, Trey Z. Cooper.

## REQUEST FOR ARGUMENT

Appellee DSM respectfully requests the opportunity to present oral

argument to the Court.

Respectfully Submitted,

//s//Christopher G. Mackaronis
Christopher G. Mackaronis
BRICKFIELD, BURCHETTE, RITTS
& STONE, PC
1025 Thomas Jefferson Street, NW
Eighth Floor, West Tower
Washington, DC 20007
(202) 342-0800 (phone)
(202) 342-0807 (fax)

Jonathan P. Pearson
FISHER AND PHILLIPS LLP
Post Office Box 11612
South Carolina 29211
(803) 255-0000 (phone)
(803) 255-0202 (fax)

*Attorneys for Appellee*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

Trey Z. Cooper - Appellant v.

No. 13-1434      **Caption:** DSM Nutritional Products, LLC - Appellee

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

- [x] this brief contains  *5,471*  [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

- [ ] this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

- [x] this brief has been prepared in a proportionally spaced typeface using
Microsoft Word 2007  [*identify word processing program*] in
Times New Roman, 14 PT  [*identify font size and type style*]; **or**

- [ ] this brief has been prepared in a monospaced typeface using
_____  [*identify word processing program*] in
_____  [*identify font size and type style*].

(s)  Christopher G. Mackaronis

Attorney for  Appellee

Dated:   6/25/13

## CERTIFICATE OF SERVICE

I certify that on $\underline{\hspace{0.3cm}6/25/13\hspace{0.3cm}}$ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Ms. Pheobe A. Clark
Wukela Law Firm
403 Second Loop Road
P.O. Box 13057
Florence, SC 29504-3057

Counsel for Appellant

_____
Signature

$\underline{\hspace{0.3cm}6/25/13\hspace{0.3cm}}$
Date